UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SCOTT IAN MOREE,                :
          Petitioner,          :
                               :   Crim. No. 3:97CR230 (AHN)
v.                             :   Crim. No. 3:98cr87 (AHN)
                               :   Civ. No. 3:01cv465 (AHN)
UNITED STATES OF AMERICA,       :
          Respondent.          :

RULING ON PENDING MOTIONS

On January 26, 1999, petitioner Scott Ian Moree ("Moree"),
who has also used the name Paul Salmon during the criminal
proceedings against him,[1] pleaded guilty to conspiracy to possess
with intent to distribute crack cocaine, in violation of 21
U.S.C. §§ 841(a)(1) and 846, and illegal reentry into the United
States after deportation, in violation of 8 U.S.C. § 1326(a).  On
April 14, 1999, the court sentenced him to two concurrent terms
of 135-months imprisonment and five years supervised release.
Now pending before the court are (1) Moree's petition for a writ
of habeas corpus [doc # 158], pursuant to 28 U.S.C. § 2255,
challenging his guilty plea and sentencing on various grounds;
(2) his motions for judgment on his § 2255 petition based on the
pleadings [docs ## 162, 170]; and (3) his motion to amend [doc #
189] his § 2255 petition to add a claim under Blakely v.
Washington, 542 U.S. 296 (2004).

For the following reasons, Moree's motion to amend is

_____

[1] The petitioner was indicted as Scott Ian Moree a/k/a Kevin
Moxam a/k/a Kevin Moxum a/k/a Paul Salmon a/k/a Mark Bell a/k/a
Skelly.  The court documents relevant to these motions all refer
to the petitioner as either Scott Ian Moree or Paul Salmon.

GRANTED, and the court construes his Blakeley claim as a Sixth
Amendment challenge to his sentence under Blakeley's federal
analogue, United States v. Booker, 543 U.S. 220 (2005).  Moree's
amended § 2255 petition is DENIED, and his motions for judgment
on the pleadings, which are essentially duplicative of his § 2255
petition, are also DENIED.[2]

BACKGROUND

On May 12, 1995, Moree, an alien and citizen of Jamaica, was
deported from the United States.  Sometime thereafter, Moree
illegally reentered the United States and became involved with a
gang that sold drugs in Bridgeport, Connecticut.  On November 19,
1997, a grand jury indicted Moree and five others for conspiracy
to possess with intent to distribute crack cocaine.  On March 16,
1998, a grand jury indicted Moree for illegal reentry.

While awaiting trial, Moree entered into a plea agreement
with the government.  Pursuant to the agreement, Moree would
plead guilty to one count of conspiracy to possess crack cocaine
and one count of illegal reentry.  In return, the government
agreed to dismiss the remaining counts at sentencing and
recommend a three-level reduction for acceptance of

_____

[2] To the extent that Moree's first motion for judgment on
the pleadings [doc # 162] seeks an evidentiary hearing on his §
2255 petition, the court observes that it conducted a hearing on
the petition on April 5, 2006.  Because the court is satisfied
that the record sufficiently shows that Moree's claims lack
merit, a full evidentiary hearing is unwarranted and the motion
seeking such a hearing is DENIED.

responsibility.

On January 26, 1999, Moree appeared before Magistrate Judge William Garfinkel to enter his guilty plea.  At the outset of the proceedings, Judge Garfinkel informed Moree that he was a United States magistrate judge, not a district judge, and that, as such, he could "only recommend to [the court] that [it] accept or, if the case be, not accept, the plea [but that he could not] actually formally enter the plea."  Judge Garfinkel also told Moree that he could "consent to proceed before [him] as the United States Magistrate Judge . . . [or] wait for another day and have this matter before [a district judge.]"  At first Moree stated that he preferred to plead guilty before a district judge, but, after discussing the matter with his attorney, Moree consented to proceed before Judge Garfinkel and signed a consent form to that effect.  The consent form read, "The defendant . . . having applied for permission to enter a plea of guilty, hereby consents to have a United States Magistrate Judge hear the application [and] to administer the allocution pursuant to [F. R. Crim. P.] 11."

Judge Garfinkel placed Moree under oath and began the allocution.  Moree affirmed that he understood the charges and applicable penalties he faced, that he was satisfied with the representation he had received from counsel, and that he had been well-advised.  In accordance with Fed. R. Crim. P. 11, Judge Garfinkel informed Moree of his right to plead not guilty, his

3

right to a jury trial, his right to confront and cross-examine adverse witnesses at trial, and his right against compelled self-incrimination.  He then informed Moree that by pleading guilty he would be waiving those rights.  Moree responded that he understood.

Judge Garfinkel next reviewed and questioned Moree about the plea agreement.  Moree stated that he had read, understood, and signed the agreement.  The government then outlined the terms of the agreement, and Moree again indicated that he understood these terms.

Judge Garfinkel also told Moree about the court's obligation to apply the sentencing guidelines.  He explained that the "sentencing guidelines limit [a] judge's discretion in imposing [a] sentence by requiring that a defendant be sentenced within a certain range, unless there are grounds for departing upward or downward," and therefore no one could "guarantee what the guideline parameters will be when [the court] imposes sentence, or what sentence [the court] will actually impose."  Judge Garfinkel emphasized that Moree's guideline calculation would be driven, in part, by what criminal history category "[Moree] may turn out to be," and that "the mere fact [Moree] might expect to be sentenced to a lower guideline range [would] not be a basis for withdrawing [his] guilty plea or overturning a sentence."  Moree indicated that he understood this as well.

Judge Garfinkel then asked the government to explain to

Moree the elements of the two offenses to which he was to plead guilty and to summarize the evidence it would have proffered at trial against him.  Moree agreed to the entirety of the government's proffer, except as to evidence that he had sold crack cocaine in a Milford hotel -- an objection that both parties agreed was not relevant because it related to one of the counts that would be dismissed at sentencing.  After further discussion with his attorney and the court, Moree affirmed that he had conspired to purchase and to resell narcotics.  Moree then pleaded guilty, first to the narcotics count and then to the unlawful reentry count.[3]

Based on the allocution, Judge Garfinkel found that there was "a factual basis for the plea" and that Moree had entered the plea "voluntarily, knowingly, and of his own free will."  Judge Garfinkel then stated that he would "enter a finding and recommendation of a plea of guilty" to the court and, if accepted, "the case [would] be referred to the United States probation office . . . to prepare a presentence report."  Although a plea of guilty was later entered, the district court never adopted Judge Garfinkel's findings that Moree's plea had been knowingly and voluntarily made or the recommendation that

_____

[3] When pleading to the narcotics count, Moree initially responded "not guilty," but, through his attorney, stated that it was a mistake and that he had meant to say "guilty."  Judge Garfinkel asked Moree again, "what is your plea?" and Moree then responded, "guilty."

Moree's plea be accepted by the court.

At his sentencing, on April 14, 1999, Moree intimated that his guilty plea had not been voluntary.  Contrary to his previous statements at the plea allocution, Moree now stated that he had not sold crack cocaine and that his attorney had brokered the plea agreement "behind [his] back."  He also stated that, when he pleaded guilty, he had been "scared" by his counsel's statement that he would face a longer prison sentence if he went to trial, and by the prosecutor's alleged remark that he would leave prison "in a body bag" if he did not plead guilty.  The prosecutor denied making the statement, and, based on Moree's apparent denial of his involvement in selling crack cocaine, recommended against a three-point reduction for acceptance of responsibility. At no time did Moree state that he wished to withdraw his guilty plea.

When the court inquired about the plea allocution, neither counsel could at first recall which judge had taken the plea. Eventually, Moree's counsel suggested that Judge Garfinkel had taken the plea.  However, neither counsel nor the court at this time realized that an Article III judge had not accepted Moree's plea.  The court proceeded to sentence Moree, imposing two concurrent terms of 135-months imprisonment and five years supervised release.

Moree appealed his sentence, contending that his trial counsel had represented him under an actual conflict of interest

at sentencing because Moree had accused him of coercing his guilty plea and of ineffective representation.  He did not directly challenge his plea or conviction.  The Second Circuit rejected these arguments and affirmed Moree's sentence.  See United States v. Moree, 220 F.3d 65 (2d Cir. 2000).

DISCUSSION

Moree contends that the court should grant his petition for a writ of habeas corpus because he received ineffective assistance of counsel at his plea allocution and on appeal.  He also raises five challenges to his conviction and sentence. First, Moree contends that his guilty plea was not voluntary because the government induced him to plead by overstating the maximum penalty for the illegal reentry charge.  Second, he argues that after he pleaded guilty before the magistrate judge, an Article III judge never adopted and accepted his plea, and thus this court was without jurisdiction to impose his sentence. Third, he argues that Judge Garfinkel never established that there was a factual basis for his guilty plea.  Fourth, he contends that this court violated Fed. R. Crim. P. 32 by failing to make a finding of fact regarding his purported objection to the Pre-Sentence Report's ("PSR") treatment of his sale of crack cocaine.  Finally, Moree has amended his petition to raise a Sixth Amendment challenge to his sentencing under Booker.  The court finds each of these claims to be without merit.

I.   Ineffective Assistance of Counsel

Moree contends that he received constitutionally inadequate representation because his counsel failed to object to the sufficiency of the indictment and failed to consult with him about issues for appeal.[4]  To prevail as a habeas petitioner on a claim of constitutionally inadequate counsel, Moree must overcome the strong presumption that counsel provided effective assistance.  See Strickland, 466 U.S. at 689.  The Second Circuit has repeatedly "declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised."  See Loliscio v. Goord, 263 F.3d 178, 195 (2d Cir. 2001).  Under Strickland, a habeas petitioner claiming ineffective assistance of counsel must make a two-part showing.  First, the petitioner must demonstrate that counsel's performance was deficient -- that is, errors were made of such serious magnitude that the petitioner was deprived

---

[4] The government contends that Moree's ineffective assistance of counsel claim is procedurally barred because he could have raised the issue on direct appeal but failed to do so. See Sanchez-Llamas v. Oregon, Nos. 04-10566 and 05-51, 2006 U.S. LEXIS 5177, at *33 (U.S. June 28, 2006).  However, Moree did raise an ineffective assistance claim on direct appeal alleging that counsel had an actual conflict with him.

The court observes that although Moree raised an ineffective assistance claim on direct appeal, he is not procedurally barred from raising this second ineffective assistance claim in his § 2255 petition because it rests on different grounds.  See Riascos-Prado v. United States, 66 F.3d 30 (2d Cir. 1995)(concluding that petitioner's argument that counsel had a conflict of interest leading him to pressure the petitioner to plead guilty was a different ground for asserting ineffective assistance of counsel than claim raised on direct appeal that counsel did not explain to the petitioner the consequences of his guilty plea).

of the counsel guaranteed by the Sixth Amendment.  <u>See</u>
<u>Strickland</u>, 466 U.S. at 687.  Second, the petitioner must show
that there is a reasonable probability that, but for counsel's
deficient performance, the result would have been different.  <u>See</u>
<u>id</u>. at 694.

A.  <u>Insufficiency of the Indictment</u>

Moree contends that counsel's performance was deficient
because he failed to object to the alleged insufficiency of the
indictment returned against Moree for illegal reentry.  Moree
contends that his indictment never alleged that he had been
"arrested," as opposed to merely being deported, and that an
arrest prior to removal or deportation is a separate element of
the crime of illegal reentry.  <u>See</u> 8 U.S.C. § 1326(a) (1995)
("[A]ny alien who . . . has been <u>arrested</u> and deported or
excluded and deported, and thereafter . . . enters, attempts to
enter, or is at any time found in, the United States . . . shall
be fined . . . or imprisoned not more than 2 years or both."
(emphasis added)); <u>see also</u> <u>United States v. Mancebo-Santiago</u>,
875 F. Supp. 1030, 1032 (S.D.N.Y. 1995)("The essential elements
of a § 1326 offense which the Government must prove are that the
defendant is (1) an alien, (2) who has been arrested, and (3)
deported, and (4) thereafter is found in the United States, (5)
without having obtained the specified consent of the Attorney
General.").

However, at the time Moree committed the crime of illegal

reentry, the defendant's arrest was no longer a separate element
of that crime.  In 1996 Congress passed the Illegal Immigration
Reform and Immigrant Responsibility Act ("IIRIRA"), which
substituted the phrase "denied admission, excluded, deported, or
removed" for the phrase "arrested and deported or excluded and
deported."  See Pub. L. No. 104-208.  Thus, under the version of
§ 1326 applicable to Moree at the time of his guilty plea on
January 26, 1999, the government was not required to demonstrate
that Moree had been arrested and then reentered the United
States.[5]

Even if Moree's indictment contained some trifling defect,
which it does not, "[c]onvictions are no longer reversed because
of minor and technical deficiencies which did not prejudice the
accused."  See United States v. Goodwin, 141 F.3d 394, 400-01 (2d

_____

[5] Although the date Moree reentered the United States is not
clear from the record, the post-1996 version of § 1326, which
does not require the government to prove that he was arrested, is
applicable to his indictment.  An alien commits the crime of
illegal reentry if, after being deported or otherwise removed, he
"enters, attempts to enter, or is at any time found in, the
United States," unless certain conditions are met.  See 8 U.S.C.
§ 1326(a).  Thus, if one is "found in" the United States, as
Moree was, the offense of illegal reentry under § 1326 "is not
complete until the authorities both discover the illegal alien in
the United States, and know, or with the exercise of diligence
typical of law enforcement authorities could have discovered, the
illegality of his presence."  United States v. Rivera-Ventura, 72
F.3d 277, 282 (2d Cir. 1995)(citations omitted).  Moree
indictment for illegal reentry alleges that he was "found" in the
United States on March 16, 1998.  Even if Moree is deemed to have
been found in the United States on November 19, 1997, the date of
his earlier indictment for drug-trafficking, his crime of illegal
reentry was complete by the time the amended version of § 1326
took effect.

Cir. 1997)(quoting <u>United States v. Wydermyer</u>, 51 F.3d 319, 324
(2d Cir. 1995)).  As the <u>Goodwin</u> court observed, "imperfections
of form [in an indictment] that are not prejudicial are
disregarded, and common sense and reason prevail over
technicalities."  <u>See</u> <u>Goodwin</u>, 141 F.3d at 401.  Moree does not
claim that he was not arrested prior to his deportation, or that
the government could not establish that he was arrested.  Thus,
Moree cannot show that he was prejudiced by any purported
insufficiency in his indictment for illegal reentry, and counsel
did not provide substandard representation in failing to
challenge the indictment.

    B.  <u>Failure to Consult Regarding Issues for Appeal</u>

    Moree also contends that his appellate counsel rendered
ineffective assistance because he "failed to consult with
petitioner about what issues[,] if any, petitioner wanted raised
on appeal."  Moree contends that appellate counsel should have
challenged (1) the district court's deviation from Fed. R. Crim.
P. 11 at his plea allocution; (2) the calculation of the quantity
of drugs attributed to the conspiracy to which he was a party;
and (3) the government's "threat" to Moree to force him to plead
guilty.[6]

---

    [6] Moree does not elaborate in his § 2255 petition on what
the government's "threat" was, but the court assumes he refers to
his statement at sentencing that an Assistant United States
Attorney told him he would leave prison in a body bag.  This
allegation is completely uncorroborated, and the AUSUA denied
making the statement in open court at sentencing.

However much Moree may disagree with counsel's choice of issues for appeal, it is well-established that a defendant has no constitutional right to select the issues his attorney must raise on appeal. See Jones v. Barnes, 463 U.S. 745, 750-51 (1983). In fact, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." See Smith v. Murray, 477 U.S. 527, 536 (1986). As the remainder of this ruling explains, none of the arguments Moree believes should have been raised on direct appeal would have served as grounds to reverse his conviction, just as they cannot now serve as grounds for granting his petition for a writ of habeas corpus.[7]

## II.  Other Challenges to Moree's Plea and Sentencing

The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising the claim on collateral review. See Sanchez-Llamas v. Oregon, Nos. 04-10566 and 05-51, 2006 U.S. LEXIS 5177, at *33

---

[7] Moree also contends that his trial counsel rendered ineffective assistance because counsel failed to inform the court that it had not accepted his guilty plea. In fact, when counsel and the court initially could not remember who had taken Moree's guilty plea, it was Moree's counsel who suggested that it had been Judge Garfinkel. To the extent that Moree argues that trial counsel's representation was defective because counsel should have requested the court adopt and approve the guilty plea, Moree cannot show prejudice. Had trial counsel objected at that time, this court simply would have reviewed the transcript of the plea before Judge Garfinkel and concluded, as it has in this ruling, that Moree's plea was voluntary.

(U.S. June 28, 2006).  Under the "cause and prejudice" exception, however, a habeas petitioner may raise a claim if he can demonstrate both "cause" for not raising the claim on direct appeal and resulting prejudice.  See Massaro v. United States, 538 U.S. 500, 504 (2003).  Moree concedes that he could have raised each of his claims on direct appeal but failed to do so. He contends, though, that "appellate counsel's deficient performance" provides sufficient cause for Moree's failure to raise these issues on direct appeal.

Moree offers no evidence of appellate counsel's inadequacy, other than counsel's failure to raise the claims that he now asserts in his § 2255 petition.  Thus, Moree's reading of the cause and prejudice language would render the exception meaningless through its circular logic.  If the ineffectiveness of appellate counsel were sufficient cause, and this ineffectiveness were demonstrated by counsel's failure to raise the claim on direct appeal, then every claim omitted by counsel on appeal would by definition satisfy the "cause" prong of the standard.  This result certainly disserves the Supreme Court's stated rationale that "rules of procedure should be designed to induce litigants to present their contentions to the right tribunal at the right time."  Id. at 504 (internal citations and alternations omitted).

The court thus concludes that Moree's other claims are procedurally barred because he cannot establish cause for his

failure to raise these issues on direct appeal.  However, even if court were to reach the merits of Moree's claims, they would fail substantively as well.

A.  <u>Voluntariness of Plea</u>

Moree contends that his guilty plea was involuntary because the government overstated the maximum mandatory sentence applicable to the crime of illegal reentry, inducing him to plead guilty to that count as well as the conspiracy count.  Moree argues that Assistant United States Attorney Alex Hernandez ("Hernandez") "recommend[ed] that [Moree] could receive a sentence of up to forty (40) years imprisonment for the offense of" illegal reentry, when in fact the applicable statutory maximum was 20 years.[8]  <u>See</u> 8 U.S.C. § 1326(b)(2) (an alien convicted of illegal reentry and "whose removal was subsequent to a conviction for commission of an aggravated felony . . . shall be fined . . . , imprisoned not more than 20 years, or both).

The court is puzzled by Moree's contention, because although the plea agreement initially stated that the maximum applicable

_____

[8] The court observes that the plain terms of the plea agreement do not "recommend" 40-years imprisonment for Moree's illegal reentry count.  Rather, the government and Moree agree in that document that the guideline range for the illegal reentry count should be 77 to 96 months.  Moree and the government also agreed that the guideline range for the drug conspiracy count should be 188 to 235 months imprisonment, and that the two sentences should run concurrently.  Thus, the government's recommended sentencing range for the illegal reentry count is essentially irrelevant, as it would be the shorter of two sentences served concurrently.

sentence for illegal reentry was 40 years, the plea agreement and

the transcript of the guilty plea before Judge Garfinkel clearly

reveal that the government corrected its error _before_ Moree

formally pleaded guilty.

> Mr. Hernandez:  I did notice that I made a mistake
> on page two of the plea letter which deals with the
> penalties of this offense.  The plea letter says that
> it's punishable by up to 40 years.  That should be 20
> years, and the term of supervised release may be up to
> three years, and I -- perhaps this would be a good time
> to just change that and quickly initial it.
> The Court:  Sure, and let me ask you to change
> that, and if you could initial it, as well as [Moree's
> counsel] Mr. Atwood initial it and Mr. Salmon [Moree]
> initial it.
> Mr. Hernandez:  Thank you, Your Honor.
> The Court:  Thanks.  Thanks for catching that, Mr.
> Hernandez.
> Mr. Hernandez:  Thank you, Your Honor.
> Mr. Atwood:  Up here, instead of 40 years he's got
> 20 years.
> Defendant:  Uh-huh.
> Mr. Atwood:  And up -- but this hasn't anything to
> do with the guidelines.  Do you understand that?
> Defendant:  Right.
> Mr. Atwood:  I'm going to initial it and then
> you're going to put your initials -- PS.  You can just
> write "PS" right there.  Okay.

Transcript of Change of Plea, at 42-43.  The plea agreement filed

with the court clearly reflects this change and the initials of

Hernandez, Atwood, and Paul Salmon (Moree).  See Plea Agreement

Letter [98cr87, doc # 10], at 2.  Moree's claim that the

government induced his plea by misstating the maximum penalty for

the crime of illegal reentry is factually unsupported, and Moree

provides no other reason for presuming that his guilty plea was

anything other than voluntary.[9]

B.  Failure of Article III Judge to Accept Moree's Plea

The "additional duties" clause of the Magistrates Act, see 28 U.S.C. § 636(b)(3), authorizes a district court judge in a felony prosecution to delegate to a magistrate judge the task of administering a Rule 11 allocution, provided the defendant consents.  See United States v. Williams, 23 F.3d 629, 634 (2d Cir. 1994).  This arrangement, which "aids an already overburdened district court in moving along its caseload of work," has been upheld against constitutional challenge under Article III.  See id. at 633-34.  As the Williams court emphasized, the defendant is in effect waiving his constitutional right to have the plea allocution administered by an Article III judge, and thus the defendant must consent to the magistrate judge taking the plea.  See id. at 634.

There is no question that Moree consented to plead guilty before a magistrate judge.[10]  In explaining the arrangement to

_____

[9] Even if the government had failed to correct its mistake in the plea agreement, the inclusion of such a mistake would not be grounds for granting relief on a habeas petition.  The Second Circuit held that where a district court erroneously informed a defendant at his plea allocution that he faced 15 rather than five years imprisonment, the misstatement was harmless error under Fed. R. Crim. P. 11(h), and did not warrant reversal of the conviction on direct appeal.  See United States v. Westcott, 159 F.3d 107, 112 (2d Cir. 1998).

[10] The record provides that Moree clearly consented to plead guilty in from of Judge Garfinkel.

The Court:  Let me just make sure that we note for the

16

Moree, Judge Garfinkel explicitly stated that he could not accept Moree's plea but could recommend to a district court judge whether to accept the plea.  Moree correctly asserts that his plea was never formally accepted by an Article III judge.

This court's failure to accept Moree's plea, however, hardly rises to the level of "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission

---

> record that [Moree] has had an opportunity to speak with his counsel in private concerning the procedural matter about whether to proceed before me today as a magistrate judge, which could result in a recommendation to Judge Nevas to accept a plea or to wait and have this matter directly before Judge Nevas.  Mr. Atwood, what does you client wish to do?
>
> Mr. Atwood:  He wishes to proceed with -- before Your Honor, and I've explained that Judge Nevas is in the midst of a fairly complicated trial and that you've been kind enough to offer your services in his stead.
>
> The Court:  And, Mr. Salmon [Moree], it's agreeable to you to proceed and you've had an opportunity to discuss this with your lawyer?
>
> [Moree]:  Sure, sir.
>
> The Court:  Okay.  Well, what we should do at this point is just have the consent form executed, and I think the clerk has a -- has a form, okay?  Why don't we just take a moment, while we're still on the record, and have counsel for the government and Mr. Atwood and his client take a look at that and execute it.
>
> Mr. Atwood:  You're going to sign right there.
>
> Mr. Hernandez:  For the record, Your Honor, myself, the defendant and Attorney Atwood have all executed the two consent forms.
>
> The Court:  Okay, thank you.  At this point, I find that the defendant has knowingly and intelligently waived his right to proceed before a United States District Judge and consents to proceed today before me as the United States Magistrate Judge, which could lead to a recommendation to Judge Nevas to accept a change of plea. . . .

Transcript of Plea, Jan. 26, 1999 [doc # 124], at 5-7.

inconsistent with the rudimentary demands of fair procedure" that would necessitate the extraordinary remedy of vacating his conviction.  See Hill v. United States, 368 U.S. 424, 428 (1962). Indeed the Second Circuit rejected a similar challenge on direct appeal in United States v. Clark, 13 Fed. Appx. 44 (2d Cir. 2001).  In Clark, the defendant consented to have his plea allocution before a magistrate judge, but that consent was conditioned on an Article III judge reviewing and accepting the plea, which the district court never did.  The Second Circuit regarded the failure of the district court to accept the plea as clear error, but nonetheless conducted an independent review of the plea allocution transcript and determined that "the plea was knowingly and voluntarily made."  See id. at 46.  Thus, the court concluded that "the defendant has made no showing that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings."  Id. (internal quotations omitted).

This court has likewise reviewed the transcript of Moree's plea allocution before Judge Garfinkel and finds no infirmities in that proceeding.  This court has rejected Moree's argument that the government induced his guilty plea by overstating the maximum penalty for the illegal reentry count.  The court has likewise concluded that Moree's accusation that the government threatened him is unsupported and not credible.  There is no indication that Moree's plea before Judge Garfinkel was anything but knowing and voluntary.  Thus, there is no basis for vacatur

18

of Moree's conviction on the basis of the district court's
failure to accept Judge Garfinkel's recommendation regarding his
guilty plea.

     C.  <u>Factual Basis for Guilty Plea</u>

     Moree contends that the plea allocution Judge Garfinkel
administered was inadequate under Fed. R. Crim. P. 11, regardless
of whether this court ultimately adopted it.  Moree contends that
Judge Garfinkel failed to make a determination that there was a
factual basis for accepting his guilty plea to the conspiracy
count because Moree disputed on the record the assertion that he
sold crack cocaine or had any dealings with his alleged co-
conspirators.

     As with many of Moree's assertions in this petition relating
to his plea allocution, this contention is also flatly
contradicted by the transcript of those proceedings.  Moree
disputed the government's contention that he sold crack cocaine
at a Milford hotel.  However, he admitted the government's other
allegations, including that he engaged in various conversations
with his co-defendants over cellular phones about distributing
narcotics.

            The Court:  Let me ask you, sir, again you heard
            the factual allegations outlined by Mr. Hernandez, and
            it's clear to me that you were listening carefully
            because you actually took exception one particular
            thing he said, namely, that you sold cocaine in a hotel
            in Milford to Mr. Lundgren.  Other than that particular
            thing that he outlined concerning Mr. Lundgren in the
            hotel room in Milford, is it correct that there was --
            there was nothing you disagreed with?

> [Moree]:   Correct.

Transcript of Plea Allocution, at 35.  Moree also directly admitted that he sold narcotics:

> Mr. Atwood:  Where did you sell drugs?
> [Moree]:  I sold drugs in different locations.
> . . .
> The Court:  [W]ho is it that you were working with in selling cocaine?
> [Moree]:  I was doing it myself, sir.

Id. at 30, 32.

Further, Moree's contention that he disputed the government's charge that he agreed with his alleged co-conspirators to distribute cocaine misses the point.  Judge Garfinkel and counsel recognized at the plea allocution that Moree denied any involvement with his indicted conspirators. However, as Moree's counsel pointed out, the indictment alleged that Moree conspired with "other persons known and unknown to the jury."  Moree admitted that he conspired with an unnamed individual:

> Mr. Atwood:  Is it true that you purchased the drugs that you sold, from someone that's not named in this first count?  From some other person?
> [Moree]:  Right
> Mr. Atwood:  Right?
> [Moree]:  Yes.  Yes.
> Mr. Atwood:  So that even though you didn't necessarily buy them from Roundhead Andrew Findley, you did buy them from someone, --
> [Moree]:  Uh-huh.
> Mr. Atwood:  -- correct?
> [Moree}:  Yes, sir.
> . . .
> Mr. Atwood:  And you did that consistently during

20

this period of November 1997, while this wiretap was
authorized, correct?
        [Moree]:  Correct.

<u>Id</u>. at 34-35.  It is clear, then, that although Moree denied
involvement with his indicted co-conspirators, he admitted that
he had purchased drugs from some unnamed individual.  This
admission permits the inference that Moree agreed to distribute
narcotics, and thus Judge Garfinkel properly determined that
there was a factual basis for Moree's plea of guilty to the crime
of conspiracy to distribute narcotics.

    D.   <u>Findings of Fact at Sentencing</u>

    Moree also contends that the district court violated Fed. R.
Crim. P. 32 by "not making a factual finding about petitioner's
objections [to the PSR] concerning the fact that he disputed
selling" crack cocaine.  Moree's claim that his sentencing was
improper is meritless.

    The courts have long recognized the right of a defendant not
to be sentenced on the basis of material false assumptions as to
any facts relevant to sentencing.  <u>See</u> <u>United States v. Ursillo</u>,
786 F.2d 66, 68 (2d Cir. 1986).  To this end, Fed. R. Crim. P.
32(i)(3)(B) provides that the sentencing court "must -- for any
disputed portion of the presentence report or other controverted
matter -- rule on the dispute or determine that a ruling is
unnecessary either because the matter will not affect sentencing,
or because the court will not consider the matter in sentencing."
The Second Circuit's "decisions have taken a strict view of the

requirements of" the Rule.  See United States v. Williamsburg
Check Cashing Corp., 905 F.2d 25, 29 (2d Cir. 1990).

The record, however, reveals that Moree's counsel never
formally objected to the PSR's conclusions regarding Moree's sale
of crack cocaine.  To be sure, Moree twice exclaimed at his
sentencing, "But I didn't sell no crack."  See Transcript of
Sentencing, at 6.  However, these outbursts can hardly suffice as
an objection to the PSR for purposes of Fed. R. Crim. P. 32.
That rule "is designed to insure maximum clarity, on the record,
of the sentencing judge's treatment of any disputed matters in
the" PSR.  See Williamsburg Check Cashing Corp., 905 F.2d at 29.
This orderly and transparent process would not be enhanced by
requiring sentencing judges to make findings of fact any time a
particularly vocal defendant such as Moree shouts something at
sentencing that conflicts with a conclusion of the PSR.
Accordingly, there is no merit to Moree's alleged violation of
Rule 32.

Even if this court were to liberally construe this
contention as an argument for ineffective assistance of counsel,
the claim would still be unavailing because it does not meet the
Strickland standard -- the facts do not establish that counsel's
performance was deficient or that Moree was prejudiced.
Counsel's performance was not deficient because, after Moree said
that the PSR erroneously reported that he sold crack cocaine, he
and his counsel discussed the PSR, and then Moree advised the

court that he did not need more time to discuss the issue with counsel, effectively withdrawing any previously voiced objection. There is no prejudice because Moree received a 135-month concurrent sentence on both counts on which he was convicted, and his sentence was at the bottom of the guideline range.

For these reasons, Moree's challenge to his sentencing affords no basis for granting the relief he seeks.

E.   Sixth Amendment Challenge

In his motion to amend his § 2255 petition, which this court has granted, Moree also challenges his guilty plea under Blakely. In accordance with Haines v. Kerner, 404 U.S. 519 (1972), which instructs courts to liberally construe pleadings prepared without the aid of counsel, this court construes this claim as a Sixth Amendment challenge to Moree's sentencing under Blakely's federal analogue, Booker.  Although the Supreme Court in Booker held that the Sentencing Guidelines under which this court sentenced Moree are not mandatory, see Booker, 543 U.S. at 226-27, this rule is not retroactive.  See Guzman v. United States, 404 F.3d 139, 142-43 (2d Cir. 2005).  The rule in Booker "does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that Booker issued." See id. at 144.  Moree's conviction became final in 2000, more than four years before the Supreme Court decided Booker, and thus he cannot avail himself of the rule in that case.

23

<u>CONCLUSION</u>

For the foregoing reasons, Moree's motion to amend [doc # 189] is GRANTED, and his amended petition for a writ of habeas corpus [doc # 158] is DENIED.  Moree's motions for judgment on the pleadings [docs ## 162, 170] are also DENIED.  Because petitioner fails to make a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.  <u>See</u> 28 U.S.C. § 2253.

So ordered this _____th day of September, 2006, at Bridgeport, Connecticut.

_____
Alan H. Nevas,
United States District Judge